[Nos. 2723-2; 2724-2. Division Two. June 30, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. MICHAEL NORTHNESS, ET AL, *Respondents.*

THE STATE OF WASHINGTON, *Appellant,* v. DONALD F. FIAS, *Respondent.*

*Henry Dunn, Prosecuting Attorney,* and *Kenneth L. Cowsert, Deputy,* for appellant.

*C. C. Bridgewater* and *Clifford R. Kuhn,* for respondents.

REED, A.C.J.—The State appeals from orders of the Cowlitz County Superior Court which suppressed evidence in two related criminal proceedings; the cases were consolidated for hearing in this court. We reverse.

In each case the defendants were charged with felony possession of marijuana. The drugs were seized pursuant to search warrants for two apartments issued on the basis of a single affidavit containing information provided by a named citizen informant, one Melissa Tennant. The affidavit reads as follows:

I, Edward L. Reeves, first being duly sworn on oath, depose and say: That I am a Sheriff's Deputy for the County of Cowlitz, Washington.

That on September 14, 1976 at about 3:30 PM, I was contacted by Melissa Tennant who told me that *she rents the apartment, that being #16, at 1152 17th, Longview, and that she lives there with a roommate,* Janie Dirickson, who shares the apartment with Melissa. She also advised me that Don Fias lives there with Janie.

That the reason for Melissa Tennant's contact with me was to inform me that today, while she was putting some clothing in a hope chest, that was in one of the bedrooms in the apartment, after doing the laundry, *she observed what she recognized to be marijuana,* in processed form, in the hope chest. She related that she estimated the amount to be approximately two pounds. She indicated to me that she is familiar with marijuana and did recognize the substance in the chest to be marijuana.

That during the conversation, Melissa Tennant told me that after finding the marijuana, she had left the apartment, returning in a short time to find that the marijuana had been removed from the hope chest and placed in a black attache case located in the closet in the bedroom where the hope chest was.

That Melissa Tennant told me she then went to Apartment #8 at 1731 Hudson to contact Don Fias and when she entered Apartment #8 she *observed* several individuals smoking cigarettes and *detected* what she recognized as the odor of burning *marijuana.*

That Melissa Tennant, the informant in this case, had never given your affiant information concerning violations of law before this date, but *she is a local resident who initiated the contact* with your affiant out of a spirit of righteousness, citizenship, and who exhibits a desire to remain law abiding and law enforcement supporting.

WHEREFORE, affiant prays that a warrant be issued directed to any peace officer of Cowlitz County, commanding him to search the premises described and seize the items listed along with the containers in which they are kept, and bring such things when found before the magistrate issuing such warrant.

(Italics ours.)

On the basis of this affidavit, a Cowlitz County district court judge issued search warrants for both apartments

mentioned therein. Execution of the warrants resulted in the recovery of marijuana from both residences.[1]

The trial court suppressed the evidence seized in the two searches, ruling that the affidavit in support of the warrants failed to recite sufficient facts to establish the credibility of the informant and thus fell short of fulfilling the second prong of the *Aguilar–Spinelli* test.[2] *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). We find, after careful consideration, that the trial court applied an improper standard in determining whether the supporting affidavit furnished probable cause to issue the warrant.

▉ Initially we note that it is well established that probable cause for a search warrant may be based upon information provided by an informant. *Jones v. United States,* 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960); *State v. Patterson,* 83 Wn.2d 49, 515 P.2d 496 (1973). In such cases, however, the officer's affidavit must furnish sufficient underlying facts from which a neutral and detached magistrate could conclude that both the information and the informant are reliable. *Aguilar v. Texas, supra; Spinelli v. United States, supra; State v. Patterson, supra; State v. Laursen,* 14 Wn. App. 692, 544 P.2d 127 (1975).

---

[1] At the suppression hearing it developed that Melissa Tennant had not supplied the officer with the address on Hudson Street, but only described the premises as "an apartment behind Monticello Garage, Apartment 8. According to Officer Nix, who executed the warrant, he discovered the Hudson Street address was correct but that the portion of the building providing access to Apartment 8 was actually located on 18th Street. Accordingly, Officer Nix telephoned the magistrate and received permission to correct the address on the warrant.

[2] Melissa Tennant's testimony at the suppression hearing varied from some of the statements credited to her in the Reeves affidavit, as well as the testimony of Officer Reeves. The trial court found, however, that the affidavit contained no misstatements of *material fact.* Thus, the case comes to us on the narrow issue of the affidavit's sufficiency to establish Melissa Tennant's credibility for an independent magistrate.

Our research disclosed situations giving rise to questions of informant credibility—the second prong of *Aguilar–Spinelli*—usually fall into one of four following categories:

Category 1: The informant remains wholly anonymous, even to the police.

Category 2: The informant's identity is known to the police, but not revealed to the magistrate. Different rules for establishing credibility must be applied, depending upon whether the informant is (1) a "criminal" or professional informant, or (2) a private citizen.

Category 3: The informant's identity (name and address) is disclosed to the magistrate.

Category 4: The situation described in *State v. Chatmon*, 9 Wn. App. 741, 515 P.2d 530 (1973) at page 748, footnote 4, as follows: "Where eyewitnesses to crime summon the police, and the exigencies are such (as in the case of violent crime and the imminent possibility of escape) that ascertainment of the identity and background of the informants would be unreasonable, the 'reliability' requirement might be further relaxed. *Cf. State v. Morsette*, 7 Wn. App. 783, 502 P.2d 1234 (1972)."

Obviously, Melissa Tennant is a category 3 informant. We have found no Washington decisions which deal directly with the fully identified citizen informant; nor have we found a United States Supreme Court case setting forth the criteria for determining the sufficiency of an officer's affidavit to establish the credibility of such an informant. Accordingly, we have looked to other state and federal cases for guidance.

In the present instance the magistrate was provided with no evidence of Melissa Tennant's trustworthiness, such as (1) that she had provided reliable information in the past, *Jones v. United States, supra; State v. Thompson*, 13 Wn. App. 526, 536 P.2d 683 (1975); or (2) that Officer Reeves was familiar with the informant's background, reputation or other facts vouching for her present credibility, *United States v. Harris*, 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct.

2075 (1971); or (3) that her information had been independently corroborated. However, we believe there was another permissible basis on which the trial court should have found that she was a reliable informant.

■ Increasingly, courts have determined that a strict application of the *Aguilar–Spinelli* two–prong test is unwarranted where a citizen informant is involved. In *United States v. Burke,* 517 F.2d 377 (2d Cir. 1975), speaking for the majority, Judge Friendly states at page 380:

[T]here has been a growing recognition that the language in *Aguilar* and *Spinelli* was addressed to the particular problem of professional informers and should not be applied in a wooden fashion to cases where the information comes from an alleged victim of or witness to a crime.

The necessity for relaxing the second prong of *Aguilar–Spinelli* when information is supplied by a citizen eyewitness or victim stems from the citizen's lack of opportunity to establish a record of previous reliability. *United States v. Wilson,* 479 F.2d 936 (7th Cir. 1973); *State v. Chatmon, supra.* In light of this handicap, and because present credibility is the touchstone, evidence of past reliability is no longer required in the case of a citizen informant. *United States v. Harris, supra; State v. Chatmon, supra.*

In *Chatmon* the informant was a citizen who refused to identify himself to the police. In that case, we held that the citizen's anonymity required that the police obtain additional information which would corroborate that given by the informant and support the inference that the informant was relating the truth. *See also State v. Singleton,* 9 Wn. App. 327, 511 P.2d 1396 (1973). Unlike the completely anonymous informants in *Chatmon, Harris* and *Singleton* (category 1 informants) Melissa Tennant identified herself to the police officers, who in turn furnished her name and address to the magistrate. This distinction has been recognized as a valid reason for relaxing the rule requiring independent evidence of credibility. "[T]he burden of satisfying

the second prong of the *Aguilar–Spinelli* test, . . . is less stringent than in the case of the unidentified and/or professional informant." *United States v. Swihart,* 554 F.2d 264, 269 (6th Cir. 1977); *United States v. Banks,* 539 F.2d 14 (9th Cir. 1976); *United States v. Burke, supra; McCreary v. Sigler,* 406 F.2d 1264 (8th Cir. 1969); *Brown v. United States,* 365 F.2d 976 (D.C. Cir. 1966). Justification for lightening the burden is premised on three grounds: (1) the report of an identified nonprofessional informant who is a victim or eyewitness of a crime substantially minimizes the danger of casual rumor or irresponsible conjecture which accompanies the report of an anonymous professional informant. *United States v. Rollins,* 522 F.2d 160 (2d Cir. 1975); *United States v. Burke, supra; United States v. Miley,* 513 F.2d 1191 (2d Cir. 1975); (2) an identified citizen informant's report does not raise the spectre of the "anonymous troublemaker" which is always present in unidentified citizen informant situations, *United States v. Darensbourg,* 520 F.2d 985 (5th Cir. 1975); (3) an identified citizen informant's report is less likely to be colored by self–interest. *United States v. Swihart, supra; United States v. Wilson, supra.*

When the informant is an ordinary citizen, as opposed to the criminal or professional informant, and his identity is revealed to the issuing magistrate, intrinsic indicia of the informant's reliability may be found in his detailed description of the underlying circumstances of the crime observed or about which he had knowledge. *United States v. Swihart, supra; United States v. Burke, supra.* If the underlying circumstances are sufficiently detailed to satisfy the first prong of *Aguilar–Spinelli,* they may themselves provide "built in credibility guides to the informant's reliability," *McCreary v. Sigler, supra* at 1269, thus fulfilling the second prong as well. The detailed information encompassed in the affidavit's "internal content" attests to the informant's reliability by its very specificity; no independent corroboration is required. *United States v. Swihart, supra; United States v. Burke, supra; United States v.*

*Mahler,* 442 F.2d 1172 (9th Cir. 1971); *McCreary v. Sigler, supra.* We subscribe to the rule enunciated in *People v. Glaubman,* 175 Colo. 41, 485 P.2d 711 (1971), wherein the Supreme Court of Colorado stated at page 52:

> We believe, and hold, that the constitutional safeguards [federal and state] are met when the affidavit supporting an arrest warrant or search warrant contains the name and address of the citizen–informant *who was a witness* to criminal activity and includes a statement of the underlying circumstances.

(Italics ours.)

Because the underlying circumstances of the crime as related by Melissa Tennant were based upon her personal observation of the contraband in her own apartment, the trial court correctly ruled that the first prong of *Aguilar–Spinelli* was satisfied. In accordance with the rule we adopt herein, those same details should have been found sufficient to support the reasonable inference that Melissa Tennant, as an identified citizen informant, was reliable, thus satisfying the second prong of *Aguilar–Spinelli.*

Finally, with respect to defendant Fias we are not unmindful of the possibility that Melissa Tennant may have been motivated by self–interest, *i.e.,* a desire to exculpate herself from criminal liability as copossessor of the premises wherein the marijuana was kept. However, the fact that an identified eyewitness informant may also be under suspicion—in this case because of her initial contact—has been held not to vitiate the inference of reliability raised by the detailed nature of the information and the disclosure of the informant's identity. *United States v. Banks, supra; United States v. Darensbourg, supra; United States v. Rueda,* 549 F.2d 865 (2d Cir. 1977).

The orders of the trial court are reversed and both cases are remanded for further proceedings not inconsistent with

this opinion.

PETRIE and SOULE, JJ., concur.

Reconsideration denied August 7, 1978.